On Rehearing.
His Honor, EMILE GOD CHAUS,
rendered the opinion and decree of the 'Court, as follows:
It is claimed that the effect of our decision is to hold that a special law, fixing the end of the term of appointive police jurors, namely Act 119 of 1890, is repealed by a subsequent general law on the subject of elections, namely, Section 25 of Act 152 of 1898, which prescribes that no commission shall be issued within 30 days of the election. ✓
But this is not an accurate statement of the situation. For at the time when Act 119 of 1890 and the subsequent act providing for the election of police jurors, Act ■161 of 1894, were enacted, it was then the law, as it is now, that no commission could issue until 30 days after election and that it was a criminal offense to assume an office without the authority of a commission. Act 58 of 1877; Section 40; Act 41 of 1873. What we did hold and now maintain is that the Act of 1890 providing for the ap *153 pointment, and the Act of 1894 providing for the election of police jurors, must be examined and construed in connection with the then existing laws in order to determine when the term of an elected police juror began and ended; and our conclusion was that since a police juror duly elected could not legally assume his office until at least 30 days after election, his term of office must necessarily begin on the latter date and not on the day of election.
And this view is in accord with that expressed and adopted by Justice Stephen J. Field, then Chief Justice of the Supreme Court of California, in a case quite similar to the one before us.
A statute of California prescribed that the Governor should appoint a District Judge to hold office “until the next general election, when a Judge shall be elected by the qualified voters of the district.” The question presented was whether under this statute, which employs the identical language adopted by our Legislature in Act 119 of 1890 and Act 161 of 1894, the term of the Judge thus elected began on the day of his election or subsequently, i. e., only after his commission had been issued and he had qualified. The Court concluded that the term commenced on the date of qualification and not on the day of election; and we quote the opinion at some length as it discloses that the laws of 'California prescribe the same requirements as do our own relative to the canvassing, publication, etc., of the returns of elections and the formalities to be observed before the successful candidate may legally assume his office:
“A different rule would, prevail if the law had fixed the commencement of the term by the designation of a day certain; in that case the issuance of the commission and the time of the qualification would conclude nothing as' to the term. But not so where *154 the commencement must depend upon certain preliminary proceedings to be taken by different officers. A new Judge cannot enter upon the discharge of his duties until the fact of his election is in some way officially determined, and authentic evidence of it furnished him. For this purpose the law prescribes certain steps following each other in regular order. The returns of the election are to be made from the different precincts to the County Clerk. After a certain interval these returns are to be opened and the vote counted. A statement of the votes of the district is then to be prepared, properly authenticated and forwarded to the Secretary of State. Upon this statement the Governor is to issue his commission, and within ten days after its receipt, the person elected is to take and subscribe the oath of office.
“The Constitution requires this .oath to be taken and subscribed before the officer can enter upon the discharge of his duties and 'the Statute requires the oath to be endorsed upon his commission. Into these matters the Courts will not minutely inquire. It is sufficient for them in determining the commencement of any particular term .of office, where that is not ■fixed by the designation of a day certain, that the Statute requires a commission to issue to the officer, and his oath of office to be endorsed thereon, and leaves its issuance to the Governor without prescribing the period within which this shall take place. In such case we must look to the qualification of the officer to ascertain the date at which his term begins. ’ ’
“Though it is true the right to an office is derived by election from the people, it is undoubtedly .competent for the Legislature to render the enjoyment .of the right dependent upon various conditions as to the ascertainment of the result of the election, the issuing of the commission and the qualification of the officer. When these conditions are imposed, the right *155 to enter and enjoy, in other words, to hold the office, is not complete until they are satisfied. Until then, the term of the officer cannot begin to run.”
In a concurring opinion, Judge Baldwin, adverting to the po-int that an Act of 1853, which prescribed that all appointees should hold over until their successors had qualified, was repealed by implication by the Act of 1854, which provided that the appointee should hold his office until the next general election, said: '
“There is no necessary conflict between the Act of 1854 and the general Act'of 1853. The last named act was intended to be general in its application. The Act of 1854 is silent .as to the time when the Judge elected at the general election should take office. The mere designation of the time of the election, and the provision that the appointee should hold until the election, do not necessarily restrict the holding to the day of the election, when we consider that a general act of the same subject exists, providing for the extension of the holding to the qualification of his successor. ’ ’
“To work a repeal, the last act must be directly and irreconcilably inconsistent with the first; that is, reading both Acts together, effect cannot be given to both. But effect can in this matter be given to both. The consequence of the construction contended for by appellant would be to leave an interregnum in this important office which we cannot suppose was designed by the Legislators. It is unreasonable to suppose that the Legislature designed to fix the commencement of the term at an earlier period than that at which the incumbent could enter into the office. Some time must necessarily elapse before the person elected could get his commission and be ready to qualify.”
Brodie vs. Campbell, 17 California, 11.
Opinion and decree, December 20th, 1915.
And the observation of Justice Baldwin as to the intention of the Legislature is peculiarly applicable to the situation here presented. For if, as respondents contend, the term of a police juror is at an end on the very day of election, then every four years there must necessarily occur in each office of police juror throughout the State, a vacancy from the day of election of each police juror to the date of his qualification — a vacancy which quadrennially it would be the duty of the Governor to fill with his appointees.
State vs. Young, 137 La., ..; 68 Sou. Rep., 241.
Certainly nothing could have been more foreign to the intention of the Legislature when it discarded the appointive and adopted the elective system with respect to police jurors, than that every four years there must legally intervene a period or term of that office which could be filled by appointment.
We are satisfied as to the correctness of the conclusions heretofore reached, and accordingly the former .opinion and decree are reinstated and adhered to by the Court.
Former decree reinstated.